## ANDERSON v. SCHOUWEILER.

### No. 2337–S.

District Court, D. Idaho, S. D.

Dec. 4, 1945.

John A. Carver, U. S. Dist. Atty., District of Idaho, and E. H. Casterlin and Merrill K. Gee, Asst. U. S. Dist. Attys., District of Idaho, all of Boise, Idaho, for the petitioner.

Ralph R. Breshears, of Boise, Idaho, for the respondent.

CLARK, District Judge.

In this suit petitioner seeks to be restored to the position he held on the 18th day of November, 1943, when he was inducted into the armed forces of the United States, or to a position of like seniority, status and pay.

The petition is under section 8(e) of the Selective Training and Service Act of 1940, 54 Stat. 890, 50 U.S.C.A.Appendix, § 308(e) (as amended, 56 Stat. 724), and the jurisdiction of this Court is based on that Section.

This Section provides that any person who, upon entering the military or naval service of the United States has left "a position * * * in the employ of any employer", shall in case of a private employer, be restored to such position or to a position of like seniority and pay "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so", Sec. 308(b).

This is an important case. It involves the rights of a returned soldier to again take the place he relinquished when he entered the service of his country. Millions of men and women have left their jobs, families and the comforts of home to bring the long and costly war in which we have been engaged to a successful conclusion; and thousands are being drafted every month to take up their duties in the armed forces of our country.

I deem it essential to set forth fully the contentions of the parties, which may be summarized as follows:

It is contended by the petitioner that he is a resident of Boise, Idaho, and that on or about the 18th day of November, 1943, he was inducted into the armed forces of the United States; that prior to and at the time of his induction he was in the employ of respondent and had been since about August 1, 1941. His position was that of manager of respondent's company at Boise, Idaho; and this position was held by him continuously from August 1, 1941, to the 8th day of December, 1943, when petitioner left respondent's employ solely for the purpose of entering the armed forces of the United States; that petitioner satisfactorily completed his period of training and service on the 8th day of December, 1944, and then received a certificate of honorable discharge, evidencing such satisfactory completion. And, on the 22nd day of January, 1945, he made application to respondent for restoration to his former position, by verbally requesting reinstatement, and, later, on the 5th day of March, 1945, made his written application to the respondent for reinstatement in said position. He further contends that he was then, and now is, qualified to perform the duties of that position and that the respondent declined and refused, and still declines and refuses to reemploy petitioner and to restore him to his former position, or a position of like seniority, status and pay, and prays for the relief provided by the foregoing Section of the Selective Training and Service Act.

It is admitted by the respondent that he refused to re-employ petitioner, and it is contended that his reasons for doing so were:

First; that petitioner was discharged by respondent prior to his induction into the military service,

Second; that the petitioner filed suit, while he was in the service, against the respondent, in the State Court, charging that respondent wrongfully and fraudulently committed certain acts as alleged in the complaint filed in the State Court (Defendant's Exhibit No. 4),

Third; that after petitioner was inducted into the military service, respondent discovered many instances of petitioner's mismanagement of respondent's business which were unknown to respondent prior to the induction of petitioner, which instances are set forth in respondent's answer, and

Fourth; contends that plaintiff's petition fails to state a claim against the respondent. Of these contentions by the respondent, Nos. 2 and 3 are the main defenses urged.

During the trial counsel for the petitioner objected to admission of any evidence as to these defenses on the ground that they were incompetent as a matter of law. This objection was overruled by the Court and evidence admitted, with the reservation on the Court's part that the question raised would be passed on in the final decision of the case, as, in proceedings of this nature, the Court felt it should not lay down any hard and fast rule in the admission of testimony, but should examine all of the facts so that in finally passing on this question, it could determine, after an opportunity for more calm deliberation, the technical questions involved.

The facts, as gleaned from the evidence, are as follows:

The respondent, Lloyd Schouweiler, is an individual doing business under the firm name and style of Reeves Wholesale Company, and was engaged in business in the City of Boise, County of Ada, State of Idaho, for some time prior to August 1, 1941, as a wholesale distributor of cigars, pipes, tobacco, cigarettes, candies, and miscellaneous sundry items. In the early part of that year he felt that the condition of his own health was such, and due to the fact that he was not satisfied with the progress of his business, that he should employ someone to take over the management of his business, and, after some preliminary discussion with the petitioner, entered into an agreement of employment on July 9, 1941, which agreement was contained in a letter dated as of that date, and introduced in evidence in this action as plaintiff's exhibit No. 1, which letter is in words and figures as follows:

"July 9, 1941

"Mr. Virgil M. Anderson
"% Winter Cigar Co.
"Sterling, Colorado
"Dear Mr. Anderson:

"According to our agreement as discussed when in Sterling and Denver, I am writing this letter to confirm our discussions. If the following meets with your approval I would suggest that you come out and look our country over and plan to take charge as soon as you can reasonably be released from your present duties.

"If you will associate yourself with my company you will be in complete charge, with only one string attached, that is I will want Results, both in the form of increased sales and net profit. For this service I wish to pay you a salary in the neighborhood of $3500 to $5000 per year, this depending upon what you think the business can and should stand. Inasmuch as you will be in charge, this figure will depend upon your own judgment. From this service on your part I expect to realize $10,000 per year as part compensation for my investment and my services. On all net earnings over this $10,000 per year and up to $20,000 per year, I agree to pay you 40% of that amount. Should the net in any year exceed $20,000 after my withdrawals of $10,000, I agree to pay you 50% of that amount over $20,000. It is to be understood that 1941 results are to be separate and apart from this agreement, as you will not have the opportunity to spend enough time with us to either take credit for any increased figures, or to be blamed in any way for poor results. This agreement is to apply from January 1st, 1942 and all additional earnings shall be payable on the results as proved by our auditors figures and shall be settled at least once each year.

"It shall be strictly understood however that in case of unsatisfactory earnings or in case our relations become personally unpleasant that this agreement can be terminated by either party submitting the company records to an auditors examination and by myself paying any bonus that may be due you on a prorata basis for that portion of the year.

"I sincerely trust that this may be the beginning of a long and mutually successful and profitable arrangement and your acceptance of this offer of employment shall make this agreement binding upon the both of us.

"Yours very truly
"Lloyd Schouweiler, Owner."

This petitioner came to Boise and entered the employ of the respondent in accordance with the provisions of this arrangement, as set forth in plaintiff's exhibit No. 1, on August 1, 1941, as manager of respondent's company at Boise, Idaho. His duties consisted of being responsible for the operation of respondent's wholesale business, including those duties ordinarily assigned to sales manager, purchasing agent, credit and office manager, and he continued in this employment under said agreement to December 8, 1943, at which time he entered active military service. The relationship between the parties during the entire period of employment was exceedingly pleasant. There is no hint of any disagreement between them. The owner worked in his own business as a salesman; assisted in taking inventories, and watched his business grow.

The first year, under the management of petitioner, the business showed a substantial increase although the petitioner was only in management of the business, in the year 1941, from August until the end of the year. The audit report shows a net profit of $4,610.27, although the Income Tax Statement, filed with the State of Idaho, shows a net profit of $1,907.89. The next year, 1942, sales were increased by $280,273.99. After salaries and the additional earned compensation under the terms of the contract of employment were paid to the petitioner, the net profits were increased to $16,420.53. In 1943, for the first nine months of that year, the audit report shows a net income of $21,190.52, and this net income was shown after the respondent had revalued his stock by reducing the price on a portion of it in the amount of $33,742.81, and charging off alleged worthless merchandise in the amount of $5,187.-55, which was segregated from the stock valued on cost price at $102,000. This revaluation was made in the absence of the petitioner, not being revalued until a long time after the previous inventory had been made when both the petitioner and respondent were present. The petitioner was drawing $165 a week at the time of his in-duction and had, at that time, under the terms of the contract, additional earnings of $16,988.01. There was no dispute of this at the time and if the original inventory, made when both parties were present during the fall of 1943, had been allowed to stand, the net profits would have greatly exceeded the $21,190.52 as shown by the audit report for the first nine months of 1943. The result of the new inventory, however, made in 1944, as of September 30, 1943, reduced the petitioner's additional earnings, as shown by the audit report, from $16,988.01 to $7,708.04. Therefore, it can readily be seen that after paying the petitioner this $165 per week and the additional sum of $7,708.04, if it had been paid, the business increased from 1942 for the year 1943 from a net profit of $16,420.53 to a net profit of $21,190.52, for the first nine months of 1943.

The petitioner continued to work for the respondent to the day of his entry into the armed forces. Inventories, management and everything was satisfactory. We must take the respondent's own words for this, in addition to the other testimony, and we find this fully recited in plaintiff's exhibit number 19, which is in words and figures following:

"November 15, 1943.

"Brief of Lloyd Shouweiler, doing business as Reeves Wholesale Co., at 602 Idaho Street, Boise, Idaho, seeking approval of payment of additional earnings to Virgil M. Anderson based on an increased productivity under incentive plan. This incentive plan guarantees to Mr. Anderson that the profits of the Company shall be a portion of his salary and that portion is based on a fixed percentage.

"This brief is brought to the attention of the Commissioner because Mr. Anderson will be inducted into the armed forces November 18th and I am anxious to complete my part of our contract as efficiently as he has his part.

"It is my belief that Virgil M. Anderson has earned this payment as he has delivered 100 per cent of what I demanded: 'Results, both in the form of increased sales and net profit.' I wish your approval of my payment, however, so that I will not be penalized on my own tax report for including this payment in our operating expenses. Taking the balance of salary due him into consideration, our percentage of operating expenses will still be approximately one third under what they have

been in previous years and our prices to our accounts are the same as they were January, 1942.

"Due to ill health, and due to the fact I was not satisfied with the progress of my business, I made a proposal to Mr. Anderson that he associate himself with me, practically on a partnership basis; he to assume all responsibility for our progress, and I to leave my investment intact. The first year's operations justified my action as we were able to list as results an—

"1. Increase in sales over 60 per cent.

"2. Increase in net Income of over 200 per cent.

"For 1943 we will show over 1942 a 125 per cent gain in sales and over 100 per cent increase in net income.

"In my opinion, these results have required the exercising of unusual ability, energy, and judgment.

"His duties as Manager made him responsible for all our operations, and he performed in addition all the duties ordinarily assigned to a sales manager, purchasing agent, credit and office manager or the owner of the business.

"It is on the basis of these facts that I seek your approval of my payment to him of the additional earnings in the amount of $16,988.01 and guaranteed to him by the attached contract.

"Particularly would I like to enumerate the following points:

"1. Contract has been in force since 1941.

"2. Operating expenses have consistently decreased.

"3. Prices are at same levels as they were January 1942.

"4. Productivity has increased under incentive plan.

"5. Additional earnings are based on incentive plan using a fixed percentage.

"I am personally appearing before you as I feel that Mr. Anderson is entitled to the additional earnings guaranteed him under his contract. Our relations have been exceedingly pleasant. The Company is enjoying unprecedented prosperity, and I am only too glad to abide by the terms of the agreement. It is my desire to pay my obligation to him before his induction in the Armed Forces. Due to the fact that a "buck" private does not have much time for personal affairs, I would like to complete this matter in order that Mr. Anderson may close his Company and private business affairs before November 18th.

"Respectfully yours

"Lloyd Schouweiler
"D/B as Reeves Wholesale Company
"602 Idaho Street,
"Boise, Idaho.

"Before a Notary:

"Approval is requested of the salary payment described in the foregoing statement which I certify to be correct to the best of my knowledge and belief.

"Subscribed and sworn to before me, a Notary Public this 15th day of November 1943.

"(Seal)                    Christine Weiss"

During the period of employment the respondent worked at petitioner's side nearly every day, checked petitioner's reports, watched the check register, signed checks, assisted in taking inventories, approved the inventories, examined and approved the audits, packed his own orders as salesman, from the stock, and then states, under oath, that the petitioner is entitled to additional earnings guaranteed him under his contract. States that their relations had been exceedingly pleasant; that he is enjoying unprecedented prosperity in his business, and knows that this young man is leaving his employ to take a position in the armed forces at a salary of $50 per month, and forfeiting a position in which he was making, in civil life, nearly $2,000 a month. This was a large salary for a young man to be making, but it must be remembered that while he was making this for himself, he had also for the first nine months of that year, even under the best figuring that could be done from respondent's viewpoint, with reduction of inventories, made his employer a net profit for those nine months of $21,190.52. The overall picture, even with the reductions, shows a continued, steady improvement in the respondent's business from the date of the employment of the petitioner until his leaving for the armed forces.

A suit was filed by the petitioner in the State Court after petitioner was in the Service, and is pending in that Court at this time. That action was filed to recover an amount claimed by the petitioner here to be due him at the time of his entry in the Service.

Any person who enters the military or naval service of the United States, and has

left a position in the employ of any private employer, must be restored to such position, or to a position of like seniority and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. There can be no question that the petitioner left his position solely for the purpose of entering the armed forces of the United States; that the petitioner was not discharged by respondent prior to his induction into the military service, and that there were no strained relations in any way between the petitioner and respondent at the time of his entry into the Service. Petitioner satisfactorily completed his army service; he received his certificate of honorable discharge; he made application to respondent for restoration to his position and that he is qualified to perform the duties of such position. He has been refused re-employment in his former position, or a position of like seniority, status and pay.

■ It seems clear, under the statute, that if a man held a position under his entry into the service, without objection on the part of his employer, and that he was, at the time, qualified for the position, an employer should not be permitted to raise any question of qualification on his return from the service where the employer had the opportunity to keep himself advised of the manner in which the employee was performing his duties. To lay down any other rule would necessitate endless litigation on the part of servicemen and servicewomen to re-enter the positions they held prior to their induction. However, having permitted the respondent to place his various defenses before the Court, we will examine first, the defense that this petitioner has sued the respondent in the State Court and by reason of that fact should not be reinstated now as manager of this respondent's business. It could just as well be said that the fact that the petitioner has filed suit in this Court to compel his re-employment would make it unwise and unjust to place him in the management and control of respondent's business. No man should be barred from any right given him under the laws of this land because he has appealed to the Courts to have his rights determined.

■ It is not for this Court to pass on the issues raised in the State Court, and no attempt will be made to do so, except to say that it is no defense to this action that this service man resorted to the Court to obtain from his employer what he felt was due him for services performed prior to his induction into the Army. To rule otherwise would simply be to say that all an employer would have to do to clear the way so that he would not be required to re-employ his employee upon return from the service, would be to refuse to pay the last month's salary and then say to the service man: "if you sue me it will create a break in our friendship; it will strain our personal relations and will make such a change in circumstances that I will not re-employ you".

■ The defense of mismanagement is not supported by the facts in this case. The accepted test of management is the progress of the business. The services performed by this petitioner supports the sworn statement made by respondent on the 15th day of November, 1943, heretofore set out in this opinion.

■ Congress did not intend that such defenses should be raised. If it had so intended, it would have so provided in the Statute. However, the nature of petitioner's position was such, as manager of respondent's business that the Court has admitted and reviewed these defenses and considered them in arriving at a decision in this case.

There is a great deal of evidence regarding errors made by petitioner during the time of his management, but the overall picture shows good management; sales increased more than 400 per cent; assets increased in like amount; respondent's net worth increased more than 100 per cent and profits increased likewise. It can not be said that this was not due to the efforts, ability, energy and judgment of petitioner. Respondent's contention that petitioner was discharged by respondent prior to his induction into the military service, or that their relations became personally unpleasant before his induction into the Army, and that he mismanaged respondent's business, are not supported by the evidence. The filing of suit against respondent by petitioner in the State Court is no defense under the facts as proven in this case. The petition filed herein states a claim against the respondent and is supported by the evidence. It is stated by the Secretary of War and the Secretary of the Navy that there will be sixteen million men and women returned to civilian life from service in the armed forces of the United States. They have been assured by Congress that they will be

returned to the positions they occupied in civilian life.

The Act under which the petitioner is proceeding provides assurance of re-employment after the completion of military service required of our young men and women, and as this Court said in the case of Stockton v. Ford Motor Co., 61 F.Supp. 261, 264, "Promises made to our service men are not to be construed as idle promises but should be construed as a solemn obligation that the agreements we have made with them will be lived up to and enforced. To look for technical loop-holes which may relieve us of our responsibilities is unthinkable where the returned service man's interest is at stake, * * *."

■ When a man or woman returned from the service is denied re-employment, the testimony in support of the refusal to so re-employ must be clear, unequivocal and convincing before the Court would be justified in holding that the service man or woman should be denied such re-employment, particularly where an attempt is made to set aside a solemn promise emanating from the Government of the United States. In this class of cases the presumptions are that the service man or woman is entitled to be reinstated. The immense importance and necessity of the welfare of the one who has served, or who will hereafter serve in the armed forces of the United States, and the welfare of our Country as a whole, demand that such refusal should only be successful when the defense is clearly stated and fully substantiated by the proof.

■ This statute was passed by Congress and approved by the President. It should be well understood that its mandate must be obeyed. The evidence on the part of respondent in this case is insufficient to warrant his refusal to reinstate this petitioner. To hold otherwise would be a stark contradiction of the promise made our service men and women on their entry into the service.

By reason of the foregoing, the conclusion of this Court is that the petitioner Virgil M. Anderson is entitled to earnings, as shown by the evidence, of $165 a week from the 5th of March, 1945, plus additional earnings due the petitioner, as shown by audit report to be filed in accordance with stipulation made in open Court by the respective parties hereto, less the amount he has earned between said dates,

that is, between March 5, 1945, and the date or dates established by the stipulation of counsel.

Counsel for the plaintiff will be required to prepare the necessary findings of fact, conclusions of law and judgment in accordance with this opinion, serve copy on opposing counsel and submit the same to the Court for approval.