**DACEY v. BETHLEHEM STEEL CO.**
**Civil Action No. 4004.**

District Court, D. Massachusetts.
May 14, 1946.

162

James H. Brennan, of Boston, Mass., for plaintiff.

Bailey Aldrich and Choate, Hall & Stewart, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action brought by the petitioner under the reemployment provisions of Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308. Petitioner seeks reinstatement to his former position as Chief of Police at the Quincy, Massachusetts, Yard of the respondent company, together with accrued wages from the date of the alleged refusal to reemploy him.

Findings of Fact

Petitioner, a resident of Quincy, Massachusetts, entered the employ of the respondent company at its Fore River Shipbuilding Yard in Quincy on September 16, 1940, as Deputy Chief of Police. On November 25, 1940, he was appointed Chief of Police.

On August 8, 1942, petitioner was enrolled in the United States Coast Guard Temporary Reserve, retaining his status as Chief of Police at the Fore River Yard. On February 27, 1943, he was appointed a Lieutenant, Senior Grade, in the United States Coast Guard, and was inducted into the active military service on the same day, assigned to duty at the Fore River Yard.

Thereafter he retained his position as head of the Yard Police, which now had become the Coast Guard Police. He received from the Coast Guard, beginning on February 27, 1943, the customary pay and allowances of a Lieutenant, Senior Grade. The respondent company paid to petitioner the difference between the amount of compensation he received from the Coast Guard and what he had received from the respondent prior to February 27, 1943. This varied in amount from $30.20 to $39.26 in relation to the number of hours worked. The greater part of his total compensation was contributed by the Coast Guard.

Petitioner's superiors at the Fore River Yard continued to exercise supervision over him, as they had done before his entry into the Coast Guard. However, I find, on all the evidence, that his ultimate superior was his commanding officer in the Coast Guard. While the occasion never arose, the inference may be drawn that the Coast Guard, which had jurisdiction over the guard force after February 27, 1943, could have countermanded orders given to petitioner by his superiors who were civilian employees of the respondent. There is no evidence to rebut the logical

inference that the Coast Guard retained complete authority to transfer petitioner to other duties at any time. Petitioner did not belong to any labor organization.

On July 1, 1943, respondent terminated whatever relationship existed between it and petitioner on that date, charging petitioner with insubordination, with specifications as to certain incidents to support the charge. After a hearing, Mr. Wiseman, General Superintendent of the respondent company, indicated that he was not opposed to petitioner's continued relationship with the company, and he abdicated his authority in the matter to Mr. Mullen, Management Representative in charge of Industrial Relations. Mr. Mullen decided that the termination was final.

Thereafter the Coast Guard transferred petitioner to other duties, and ultimately to sea duty.

On September 8, 1944, petitioner was released from active duty by the Coast Guard, and received a certificate for the completion of a period of satisfactory service. On or about October 1, 1944, he made application to the General Manager of the respondent company at Quincy for reinstatement to his former position as Chief of Police, but his request was refused and he has not been reinstated to this date. In view of the fact that petitioner testified he received commendations from the General Manager of the respondent during June of 1943; that Mr. Wiseman was ready to recall the July 1, 1943, termination order; and that petitioner served satisfactorily as an officer in the United States Coast Guard, I find that petitioner is still qualified to perform the duties of Chief of Police at the Fore River Yard.

Petitioner's complaint was filed in this court on July 19, 1945.

Section 308 of 50 U.S.C.A. Appendix, provides in its material parts as follows:

"(a) Any person inducted into the land or naval forces under this Act for training and service, who * * * satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect upon the completion of such period of training and service * * *.

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service. * * *

"(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position. of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so * * *."

These provisions should be given a liberal construction in favor of the veteran applicant for reemployment so long as violence is not done to the exact language of the statute. Kay v. General Cable Corp., 3 Cir., 144 F.2d 653; Grasso v. Crowhurst, 3 Cir., 154 F.2d 208; Trailmobile Co. v. Whirls, 6 Cir., 154 F.2d 866.

When petitioner entered upon active service on February 27, 1943, with the United States Coast Guard, he had, in contemplation of law, left a position in the employ of an employer to perform service in the armed forces. On that date he became subject to the complete and exclusive jurisdiction of the Coast Guard to be assigned to any station for duty. At this point his rights under the Selective Training and Service Act were established. No subsequent relationship between petitioner and respondent during the course of his active military service could operate as a waiver of those rights. It was within the respondent's power to terminate the new relationship that existed between it and petitioner after February 27, 1943, and to stop the payment of the additional compensation which was in the nature of a gratuity. This action had no effect on the employment status contemplated under § 308, as this had been terminated on February 27, 1943. Since petitioner's rights under § 308 accrued on that date and are still effective, it follows that compliance with the three conditions laid down by the

statute entitles petitioner to reemployment pursuant to its terms.

■ There remains for consideration the effect to be given to the language in § 308 (e) empowering this court to compel reemployment and, "as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." The object of this subsection is two-fold: (1) To make it possible for persons whose skills have been blunted by war service to regain them by actual usage in the course of regular employment; (2) To provide a stabilized income for the veteran during the period of readjustment. The obligations imposed by Congress are in the conjunctive rather than the alternative. In any event, the petitioner is entitled to the opportunity to practice for one year the skills and techniques incident to the position which he seeks restored. In addition, he should be compensated for the loss in income sustained by respondent's wrongful refusal to reinstate him.

On this latter issue there are two main questions: (1) Should this compensation run from the date of application for reemployment, or the date when suit was brought under § 308(e)? (2) Is the employer entitled to credit for earnings of the petitioner on other jobs while awaiting reinstatement?

In Kay v. General Cable Corporation, D. C., 59 F.Supp. 358, compensation for loss of wages was made effective only from the time of the commencement of the action in the District Court, and not from the time of the employer's refusal to reinstate. In Anderson v. Schouweiler, D.C., 63 F. Supp. 802, the effective date was held to be March 5, 1945, when written application was made for reinstatement, rather than January 22, 1945, when a verbal request was made.

■ I believe, in general, that the governing date should be the day on which application for reemployment is made. However, where the veteran has delayed an unreasonable length of time in enforcing his demands, it would be unfair to the employer to compel compensation for this interim period. In the present case the original application for reemployment was made on or about October 1, 1944, while suit was not begun until July 19, 1945. This is an unreasonable delay and no compensation is due petitioner for this period. Respondent's obligation for accrued compensation is to be dated from July 19, 1945.

■ Inasmuch as the object of the compensation provisions of § 308(e) is economic rather than penal, respondent is entitled to credit for earnings made by petitioner from July 19, 1945, to the date of reinstatement.

### Conclusions of Law

In view of the foregoing, I find and rule that the petitioner is entitled to reemployment by the respondent for one year in the position of Chief of Police at the Fore River Yard, together with accrued compensation lost by reason of the refusal to reinstate him in such position from July 19, 1945, to the date of reinstatement. Respondent is entitled to credit for earnings as indicated above. Respondent's requests for rulings, insofar as they are inconsistent herewith, are denied.

The state of the evidence submitted is such that the Court cannot intelligently, and with any degree of accuracy, compute the amount to which the plaintiff would be entitled during the period above named, nor can it compute in a like degree the amount of credit to which the defendant is entitled. I will therefore leave the matter to the parties to adjust between themselves in accordance with the above or, upon failure to do so, to re-apply to this Court for further hearing on the question of the actual damages suffered.