## GRONE v. CONGREGATION OF BROTHERS OF ST. XAVIER.

### No. 1131.

District Court, W. D. Kentucky,
at Louisville.
May 26, 1947.

David C. Walls, U. S. Atty., and Randolph A. Brown, Sp. Asst. U. S. Atty., both of Louisville, Ky., for petitioner.

Marshall P. Eldred and Brown & Eldred, all of Louisville, Ky., for respondent.

SHELBOURNE, District Judge.

### Findings of Fact.

I. Petitioner, Clyde P. Grone, was head football coach at St. Xavier High School, Louisville, Kentucky, the respondent, for the football seasons from 1936 to and including 1942, during each of which seasons he performed his duties as head football coach at said institution.

Occasionally, said petitioner, while employed as football coach for said football seasons, helped otherwise during the football season by temporarily substituting as a teacher of Civics and History upon the request of the respondent. Petitioner was paid for his services as a teacher according to the actual time he was so engaged, as the contract did not incorporate any agreement providing for the amount of compensation for any teaching services.

II. Petitioner performed his services during each football season from the football season of 1936 to and including the football season of 1942 under written contract. Each contract was for one football season only, except that the last contract executed between the parties was for the football seasons of 1941 and 1942.

III. At the conclusion of each football season the expiring contract was not renewed but a new contract was executed for the next football season, except that the football seasons for 1941 and 1942 were included in one contract.

IV. The new contract for each subsequent football season was not made at the same time each year. Contracts between the parties for the football seasons of 1938, 1939 and 1940 were filed as exhibits. These contracts show that the contract for the year 1938 football season was executed on December 4, 1937, and the football season was designated as starting February 1, 1938. The contract for the football season 1939 was executed February 3, 1939, and stated that the football season for 1939 was to start in February of 1939. The contract for the 1940 football season was executed December 23, 1939, and provided that the football season for 1940 was to start in March, 1940. The contract for the football seasons of 1941 and 1942 was executed January 31, 1941, and provided that the football seasons for each of these two years was to start with February or March of each respective year.

V. The contracts for the succeeding football seasons did not always provide for the same compensation. As shown by the exhibits filed, the compensation provided in the contract for the 1938 football season was $1,200, that for the 1939 and 1940 football seasons it was $1,300 and that for the 1941 and 1942 seasons it was $1,400. The last contract executed by the parties was for the football seasons of 1941 and 1942, and was executed on January 31, 1941, and is in words and figures as follows, to-wit:

"St. Xavier High School
"118 West Broadway
"Louisville, Kentucky
                "January 31, 1941
"Contract between St. Xavier High School and Clyde Grone.

"Re: Football Coach

"This agreement made and entered into this 31st day of January 1941 by and between St. Xavier High School, party of the first part, and Clyde Grone, party of the second part.

"Witnesseth: That the party of the second part agrees to take up the duty of football coach for the 1941 and 1942 seasons and to help otherwise during the football

season. The football season is understood, in this contract, to include practice during the spring months, starting with February or March 1941 and February or March 1942.

"The party of the first part agrees to recompense the party of the second part to the amount of Fourteen Hundred Dollars ($1,400.00), payable in installments during the season, with the stipulation that no more than Four Hundred and Eighty Dollars ($480.00) will be paid before September 1941 and ($480.00) before September 1942.

"In case of Mr. Grone's being called to serve in the armed forces of the U. S., this contract will be void from date of termination of service at St. X.

"Signed   C. P. Grone
"Signed   Brother William, C. F. X."

VI. The football season for 1942 terminated on November 29, 1942, when respondent's team played its last football game.

On November 30, 1942, respondent paid petitioner the balance of compensation due him and no payments have been made to petitioner by respondent since that date.

VII. During the 1942 football season petitioner received notice to report for military duty but did not report for duty until December 7, 1942.

VIII. During the year 1942 petitioner received from the respondent as compensation for his services the sum of $1,551.

IX. Petitioner received an honorable discharge from the Army on September 16, 1945.

X. Petitioner on November 28, 1945 applied to respondent for reemployment in his former position, but respondent refused to so reemploy him.

XI. The petition herein was filed on June 6, 1946 and was tried before this Court sitting without a jury on March 6, 1947.

XII. Petitioner on September 1, 1946, was employed by the Newport, Kentucky Board of Education as a teacher and assistant football coach in the Newport High School at a salary of $166.66 per month. Thus, as of the date of the trial, petitioner had received $999.96 compensation for his services from September 1, 1946 to March 6, 1947.

### Conclusions of Law.

I. This Court has jurisdiction of the parties and of the subject matter. Title 50 U.S.C.A. Appendix, § 308(e).

II. "Where a worker in a seasonal business can establish 'customary continuance in his employment and recognition of his preferential claim to his job' when work is resumed, he is entitled to the protection of the Act's reemployment provisions, though he entered military service during an off-season period. Proof of a legally enforceable contract for the following season is no more a proper requirement in such cases than it is with respect to any other employee whose services are terminable at will." Stanley v. Wimbish, 4 Cir., 154 F.2d 773, 775. The execution of contracts evidencing petitioner's employment each year beginning in 1936 and including the contract in question for the years 1941 and 1942 establishes the customary continuance and the respondent's recognition of petitioner's preferential claim to be employed as head football coach.

III. The rule in the Wimbish case is a most liberal construction of the Act. A liberal construction is demanded by the Supreme Court. Fishgold v. Sullivan Drydock Corporation 328 U. S. 275, 66 S.Ct. 1105, 89 L.Ed. 1230, 167 A.L.R. 110.

IV. When the petitioner reported for duty with the Military Forces of the United States on December 7, 1942, he had left the employ of his employer on November 30, 1942, because of the expiration of the period employment by terms of the contract of employment. However, from 1936 up to the date of petitioner's induction, it had become customary to continue petitioner's employment and from the facts stipulated and proven in this case, it is inferred that petitioner would have been continued as head football coach, but for his induction into the Army.

V. Petitioner's induction into the Army at a time when a legally enforceable contract for the football season of 1943 had

been executed, was not a necessary requisite to his right to demand reinstatement upon his discharge from Military Service.

■ VI. The important point is that the veteran is entitled to be restored to the employment status which he left to enter the service, regardless of the terms of the contract of employment under which his compensation in that position was fixed from time to time. In Trustee Funds, Inc., v. Dacey, 1 Cir., 160 F.2d 413, 419, the Court said with reference to a position held under a written contract by a veteran prior to his entry into the Service:

"The positions were expected to be continuous ones, provided the relationship proved to be mutually satisfactory. This is none the less true because of the fact that the company (§ 8 apart) could terminate the employment by refusing to renew the contract upon its expiration. The same may be said of an ordinary workman employed at will; it may be apparent from the circumstances attending the creation of the employment that the position was expected to be continuous, for the indefinite future, and notwithstanding the right of the employer to terminate the employment at any time such position is one 'other than a temporary position' within the meaning of § 8. In either case the effect of § 8, enacted by Congress under its broad war powers, is to impose upon the employer an obligation he had not contracted to assume —an obligation to reemploy the veteran, and not to discharge him without cause within one year after such restoration."

VII. Petitioner left a position other than temporary in the employ of respondent to enter the service and he shall be reinstated as head football coach of respondent's high school in Louisville, Kentucky, as of March 6, 1947, and to help otherwise during the football season, with the right not to be discharged or demoted without cause within one year thereafter.

■ VIII. The position which petitioner held as head football coach at respondent's school was of a professional nature and therefore petitioner, upon restoration to it, is not entitled to be paid the same salary as the encumbent. In Kay v. General Cable Corporation, D. C. 63 F.Supp. 791, 794, the Court said:

"Thus, where the veteran is restored to his former position, he is entitled to whatever emoluments or increases may have accompanied that position when such increases are the result of either a general in-grade increase resulting from length of service and to which the veteran would have been entitled had he been continuously employed, or where the increase results from an overall wage policy applicable to all employees or to employees of a specified group of which the veteran is a part.

"Where the wage increase of a particular position results neither from an overall company wage policy, nor from automatic in-grade increases, the veteran is not automatically entitled to an increased wage for the sole reason that another who presently holds the same or a like position as that formerly held by the veteran is presently receiving a higher wage. In such case it can in no way be said that the veteran has been denied any seniority rights.

"This is the more true where the position in question is of a professional or special nature requiring individual skill, ability and training such as is the position here involved. In such a case the wage is determined by individual ability rather than on a wage scale on the job itself. * * *"

■ IX. Petitioner shall receive from the respondent the salary of $1,551 for the year beginning March 6, 1947. This is identical to the compensation which he received for the year 1942 and shall be paid as follows: $480.00 on or before September 1, 1947, and the balance of $1,071.00 on or before December 1, 1947.

X. In addition to the above compensation, respondent shall compensate petitioner for the damages he has sustained by reason of the failure of respondent to re-employ him on November 28, 1945. These damages shall be computed as follows:

$480 plus interest at 6% from September 1, 1946, until paid;

$1,071 plus interest at 6% from December 1, 1946, until paid;

From the sum of the foregoing shall be deducted $999.96 which petitioner earned

during the period from September 1, 1946, to March 6, 1947.

XI. All court costs shall be taxed to respondent.

XII. Counsel for petitioner will prepare a Judgment in conformity to the above findings.