## MIHELICH v. F. W. WOOLWORTH CO.

### No. 1637N.

District Court, D. Idaho, N. D.
Dec. 7, 1946.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin, Asst. U. S. Dist. Atty., both of Boise, Idaho, and Paul S. Boyd, Asst. U. S. Dist. Atty., of Pocatello, Idaho, for plaintiff.

W. F. McNaughton, of Coeur d'Alene, Idaho, for defendant.

CLARK, District Judge.

As counsel for the defendant has said, we would make a great mistake if we didn't realize the importance of this case. I consider it of great importance.

The Section under which this action is brought provides that any person who upon entering the military or naval service of the United States has left a position in the employ of any employer be restored to such position or to a position of like seniority and pay, unless the employer's circumstances have so changed as to make it impossible and unreasonable to do so. 50 U.S.C.A.Appendix, § 308.

This petitioner was employed by the defendant from January 19, 1930 until March

7, 1942, over eleven years, when he was inducted into the armed forces of the United States. I think it can be said as a matter of law, and it is admitted in this case, that the petitioner's services were satisfactory during his period of employment as the defendant made no charge that they were not satisfactory prior to his induction in the armed forces.

There was some evidence from this witness stand by one of the superintendents or division managers which cast some reflection upon the ability of this petitioner but the Court feels that was unfounded and the Court is paying no attention to it.

This petitioner lived in Coeur d'Alene, he had a good position with the defendant company in his home city. There can be no question that he left this position solely for the purpose of entering the armed service and that if it had not been for the war he would still be the manager of the defendant's store in Coeur d'Alene.

There can be no question as to his giving satisfactory service, there is no indication that he wasn't, and if there had been any indication, it was the duty of the defendant to act before he entered the armed service.

There is evidence, and the defendant has set forth as its reason for denying this petitioner his old position, that they have moved their store from one location to another in the same city and that the old store is not in existence, where this petitioner worked; that the new store is physically larger in size than the old one, requires more help, handles a greater quantity of merchandise and does more business.

■ I might use the term "what irony"—no man would be able to go back to his job on returning from the service if this was a defense. It may be possible to read this defense into the law,—that the employer's circumstances are so changed as to make it unreasonable to employ this petitioner, but this Court will not so interpret it under the facts in this case. What caused this defendant to move into larger quarters; what caused it to increase and enlarge its stock? No one will dispute that it was caused by the war which this petitioner was helping to win,—and the Court is of the opinion that it didn't grow to such an extent that

this petitioner could not successfully manage it, because the manager who was here taking this man's place while he was in the armed forces simply walked over to the new store and continued as manager of the new and enlarged store. Were it not for this man and others like him this business might not have had the opportunity to grow. This store might have been reduced by bombs to a mass of rubble. This might be stretching our imagination, but the situation was such that this man and millions of others like him were called to the Service to help protect our country; to protect you and me and the man who replaced him as manager while we were all safely at home.

While this store was adding more and more to its profits, this petitioner, who, it is admitted, has served the defendant faithfully and well for years, was reduced to the rank and to the salary of an ordinary soldier. He didn't go in as an officer, but as a private in the ranks. It wasn't a question of salary with him—it wasn't a question of profits—he offered his life if necessary to protect you and me. When the petitioner left to serve with the armed forces he was commended by his employer, the defendant here. I don't care to indulge in any patriotic address, I only want to mention a few facts. It has always been the practice in this Country to commend those who left to serve their country in an emergency such as we recently went through; there is always flag waving, cheering, hand shaking, addresses and bands playing. What about the return? That is practically unnoticed. Certainly this petitioner has been penalized severely from a financial standpoint; he not only lost those years when he could have been making money, but he lost his position. He was promised by the Government that this would not happen to him if he survived this conflict.

The serious question here is whether the defendant met the technical requirement of the Statute. That is, was the petitioner restored to such position, or to a position of like seniority and pay when he was assigned to the store at Astoria. I think not.

■ There was a provision in his contract that would indicate that the Com-

pany had a right to do this, even though the position was not located in as pleasant surroundings, but I feel that the provisions of the Selective Service Statute did not contemplate that any clause in a contract of employment would be construed to place the service man in a worse position than he was prior to his induction into the Service, and it would seem that this petitioner was placed in a poorer situation. The evidence is very unsatisfactory in that regard, but at least we have evidence that the petitioner would have made less money at the store at Astoria.

This Court held in the case of Anderson v. Schouweiler, D.C., 63 F.Supp. 802, 808:

"The Act under which the petitioner is proceeding provides assurance of re-employment after the completion of military service required of our young men and women, and as this Court said in the case of Stockton v. Ford Motor Co., [D.C.], 61 F.Supp. 261, 264 'Promises made to our service men are not to be construed as idle promises but should be construed as a solemn obligation that the agreements we have made with them will be lived up to and enforced. To look for technical loopholes which may relieve us of our responsibilities is unthinkable where the returned service man's interest is at stake, * * *.'

"When a man or woman returned from the service is denied re-employment, the testimony in support of the refusal to so re-employ must be clear, unequivocal and convincing before the Court would be justified in holding that the service man or woman should be denied such re-employment, particularly where an attempt is made to set aside a solemn promise emanating from the Government of the United States. In this class of cases the presumptions are that the service man or woman is entitled to be reinstated. The immense importance and necessity of the welfare of the one who has served, or who will hereafter serve in the armed forces of the United States, and the welfare of our Country as a whole, demand that such refusal should only be successful when the defense is clearly stated and fully substantiated by the proof."—and I can say that is not the case here.

Again quoting from the former case, "This statute was passed by Congress and approved by the President. It should be well understood that its mandate must be obeyed. The evidence on the part of respondent in this case is insufficient to warrant his refusal to reinstate this petitioner. To hold otherwise would be a stark contradiction of the promise made to our service men and women on their entry into the service."

Now back to this present case, I don't feel that it should be delayed longer and I am not going to take it under advisement as to the main issue.

■ It is the conclusion of this Court that the petitioner is entitled to be reinstated to his position as manager of the Coeur d'Alene store, and is entitled to such earnings as an audit report will show that he would have earned had he been reinstated in his former employment as it existed at the time of entering the service,—between March 25, 1946, and this date.

In view of the fact that the petitioner has been working for the defendant company since February 4, 1946, this should possibly be figured from that day until the present time, and if there is any delay in his being reinstated in his old position as manager of the store at Coeur d'Alene, then to February 4, 1947. Of course, there would have to be deducted any moneys paid or earned by the petitioner during that time.

The relief that this Court can give will be short lived if the defendant desires to dispense with the services of the petitioner. Unfortunately, one year's employment is the only requirement of the law.

I might say, entirely independent of the Court's decision in this case, that I feel, where the future welfare of this petitioner is concerned and where he has sacrificed so much to fulfill his duties to his country, that this defendant company, which is one of the largest organizations, both in volume of business and financial strength, that we have in this country, should keep this petitioner in their employ and I feel that counsel for the petitioner and counsel for the defendant should sit down with their

clients and adjust what differences there may be between them and give this young man just as good a chance for his future as he would have had if he had not been placed in the position of joining the armed forces of his country. This may be a hope on the part of the Court that will not be realized, for in every case that I know about the service man was through as soon as he tried to take advantage of this law which was given to him by Congress, and his employer dispensed with his services just as soon as he could legally do so, and simply because he had appealed to the Courts. There is nothing that the Court can do and no help that the Court can give this young man. So as I look into the future, based on other cases presented to this Court and other cases that I have known about—even if the defendant company did not appeal this case to the higher Court, this petitioner would be through in February, which is but little more than two months, even if he is reinstated. I think you can see why I think it is an idle gesture to order him reinstated. If it is appealed to the higher Court and the decision of this Court is sustained, the year would be up and he would be out, so, instead of collecting on the promissory note from his Government, all he gets is ashes. I am not saying that this defendant company is going to do this, but it is the precedent established. This may be entirely outside of anything that the Court should say because the Court is only here to render an opinion or a decision on the facts as presented, but I do hope that counsel will sit down with your respective clients and adjust any differences there may be between them.