## LEVINE v. BERMAN.
### No. 9176.

Circuit Court of Appeals, Seventh Circuit.
May 6, 1947.

Rehearing Denied June 2, 1947.

BRIGGLE, District Judge, dissenting.

J. Albert Woll, U. S. Atty., and John Peter Lulinski and Maurice C. Handelman, Asst. U. S. Attys., all of Chicago, Ill., for appellant.

Richard Rex Parkin and J. Roy Browning, both of Chicago, Ill., for appellees.

Before KERNER, and MINTON, Circuit Judge, and BRIGGLE, District Judge.

MINTON, Circuit Judge.

The petitioner-veteran brought this action against the respondent-employer for restoration to his former position, pursuant to the provisions of the Selective Training and Service Act of 1940, as amended, 50 U.S. C.A.Appendix § 308. The case was tried by the court, which made findings of fact and stated its conclusions of law thereon in favor of the respondent and gave judgment accordingly. From this judgment the veteran has appealed.

Several errors ars assigned but in the view we take, the case can be fully disposed of on the assignment of error that the findings of the court do not support the conclusions of law.

Considering the findings alone, this is the case presented: In January 1941 the respondent employed the petitioner as a salesman of six separate kinds of rugs, among them a rug known as the "Tumble Twist" rug. When not on the road, the petitioner was to sell in the respondent's Chicago office. When on the road, he had assigned to him a particular territory, comprising the States of Illinois, Indiana, Wisconsin, and Michigan, with the exception of certain cities, and the eastern half of Minnesota and the eastern half of Iowa, excluding certain cities. He received a commission on all sales made in this particular or exclusive territory, whether he made the sales or not. The rates of commission varied from three per cent to ten per cent. The petitioner paid his traveling expenses.

In April 1942 the petitioner left the respondent's employ to enter the armed service of the United States, and on December 17, 1945 he was honorably discharged therefrom. On December 18, 1945 he made application to the respondent for reemployment. On December 18, 1945 the respondent was engaged in selling only the "Tumble Twist" rug. The sales of this one rug had increased greatly and the volume of sales of the rug for the year 1946 was expected

to be six times that for 1941. The demand therefor was in excess of the supply, and the respondent had to allot rugs among its customers. Commencing for the first time on January 1, 1946, the respondent, in conjunction with the manufacturer of the rug, was to advertise the rug nationally. During his employment the petitioner was paid a ten per cent commission on "Tumble Twist" rugs. Commencing in 1942 with some salesmen and in 1943 and 1944 with others, the commission rate was reduced to seven and one-half per cent on this rug. Not until January 1, 1946 did the respondent reduce the commission rate to seven and one-half per cent to all new salesmen. Other salesmen received the ten per cent commission until sometime between January 1, 1946 and the date of the trial. There were no allotments to salesmen or territories prior to the petitioner's entry into service. The territory the petitioner had as his particular and exclusive territory before his entry into service was being covered by three salesmen at the time of the trial. One of these salesmen had a territory which coincided with the territory described in the petitioner's petition and claimed by him. The other salesmen had segments of the petitioner's old territory, combined with other territory.

On December 18, 1945 the respondent offered reemployment to the petitioner as a salesman of "Tumble Twist" rugs for a year at a commission of seven and one-half per cent, with an allotment of $100,000 worth of rugs to sell in a territory, so that his earnings during the year would be $7,500. The petitioner refused the offer. On January 25, 1946 by registered letter addressed to the petitioner, the respondent offered to employ him as a salesman, assign him a territory, pay him a commission of seven and one-half per cent, and allot him sufficient merchandise for his territory so that his commission would be not less than $4,922.83, which was the total commission earned by him the last year he worked for the respondent before he went into service, and to credit him with an additional $410 to cover the commission he might have earned from December 18, 1945 to January 26, 1946. The petitioner received the letter but made no reply.

On these findings the court concluded:

"II. The circumstances of the defendants' business have so changed as to make it impossible and unreasonable for the defendants to restore the petitioner to the position he occupied prior to his entry into the armed service of the United States, or to a position of like seniority, status, and pay, within the meaning of Section 8 of the Selective Training and Service Act of 1940 (54 Stat. 890, 50 U.S.C.A. [Appendix, §] 308), as amended.

"III. The defendants have offered to reemploy the petitioner at a position with seniority, status and pay as nearly like the former seniority, status and pay of the petitioner as is possible in view of the change in the circumstances of the defendants' business, and such offer of reemployment has been made in good faith.

"IV. The defendants have not failed or refused to comply with the provisions of subsection (b) or subsection (c) of Section 8 of the Selective Training and Service Act of 1940 (54 Stat. 890, 50 U.S.C.A. [Appendix, §] 308), as amended."

The pertinent provisions of the statute involved are as follows:

"Title 50 U.S.C.A. Appendix, § 308.

   *     *     *     *     *     *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service * * *—

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;"

No question of seniority is involved. Did the findings of the court, which we accept, support the conclusions of law? In short, was it impossible or unreasonable, due to changes in the respondent's circumstances, for the respondent to reemploy the peti-

tioner in his former position as a rug salesman in a particular territory at a commission of ten per cent?

We do not think so. The respondent was still selling "Tumble Twist" rugs in the same territory and some time between January 1, 1946 and the date of the hearing, some salesmen were still receiving ten per cent commission. At the time of the hearing all salesmen were receiving seven and one-half per cent commission. The change in condition was that the respondent was selling six times as many rugs in 1946 as in 1941 and had more orders than the manufacturer could fill. Allotment of rugs to respondent's customers became a business necessity, but the same territory that the petitioner had when he went into service was still being covered by another salesman and parts of the territory by two other salesmen. So it was possible to give the petitioner his old territory with whatever allotment the territory was entitled to. Nor do we think it unreasonable to require the respondent to do so. There is no showing that the petitioner could not have successfully disposed of the allotment, whatever it may have been for that territory. The petitioner had worked in his old territory in less lush days. Presumably he had friends and customers in his territory, and he was entitled to the benefit of his acquaintance and knowledge of this territory. When he returned he found other salesmen in his territory. There is no showing that it was impossible or unreasonable to remove one or all of these salesmen from the petitioner's old territory and to restore the territory to him. His status when he went into service was that of a salesman in an exclusive territory, without an allotment of "Tumble Twist" rugs for said territory. His status at the time he applied for reemployment was the same, except as circumstances had made it necessary for the respondent to make allotments of rugs to its customers in the various territories. Since it was possible to restore the petitioner to his old territory, he was entitled to it under the law. The changed circumstances of the respondent were such that he would have to accept an allotment of "Tumble Twist" rugs in that territory.

The next question is his pay. Since he was receiving ten per cent on "Tumble Twist" rugs when he went into service and other salesmen were receiving ten per cent commission on these rugs at the time the petitioner applied on December 18, 1945 for his old job and for some time thereafter, he was entitled to be restored at his old commission. No change of conditions had made this unreasonable or impossible. While the petitioner was in service doing his bit to win the war, the respondent's business had prospered so greatly that it could not supply all the rugs it received orders for. When the petitioner returned from service with an honorable discharge and his service, with that of other men, had won a war that made it possible for the respondent to prosper so abundantly, we do not see on this record how it would have been unreasonable or impossible for the respondent to restore the petitioner at his old commission. That is what he was receiving when he left. Some of the respondent's salesmen were receiving the same commission when he returned and applied to be restored and for some time thereafter. The record does not reveal what the petitioner might have earned if allowed his old territory with his allotment at his old commission of ten per cent. We cannot therefore say that it would be unreasonable, and certainly not impossible, to restore the petitioner to his territory under allotment at his old commission. We cannot say it is unreasonable unless we are to say that the returning serviceman shall not share in the abundant prosperity when he returns. We are not prepared to go that far. Indeed, the tenor and purpose of the Act guide us in a different direction.

The Supreme Court said in Fishgold v. Sullivan Drydock & Repair Corp., et al., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 167 A.L.R. 110:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. * * * Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits."

See also Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653; Grubbs v. Ingalls Iron Works Co., D. C., 66 F.Supp. 550, 553.

" 'Unreasonable' means more than inconvenient or undesirable." Kay v. General Cable Corporation, supra, 144 F.2d at page 655. We think it means more than having to share the profits of a booming business inordinately prosperous because of the war the petitioner went away to serve in. Therefore, we do not think it impossible or unreasonable under the court's findings for the respondent to restore the petitioner to his former status, modified only by the necessity of an allotment, and to pay him his old commission, and the court erred in its conclusions of law that it was impossible and unreasonable.

Did the respondent offer the petitioner a position with status and pay as nearly like his former status and pay as possible in view of the changed circumstances of the respondent's business? From what we have said above, it is apparent that we do not think so. The petitioner was offered *a* territory, not his old territory. He was not offered his old commission of ten per cent but was offered in one instance seven and one-half per cent to sell "Tumble Twist" rugs in *a* territory, and in another instance he was offered merchandise, what kind does not appear, in *a* territory at seven and one-half per cent. Such offers as to territory and commission do not square with his status and pay before he entered the service and do not satisfy the statute.

The judgment of the District Court is reversed, and the cause is remanded thereto with directions to the court to restate its conclusions of law in accordance with this opinion.

BRIGGLE, District Judge (dissenting).

I think the judgment of the District Court should be affirmed. In my opinion the conclusions of law of the trial court of changed conditions are amply supported by the findings. At the time plaintiff left for the military service, defendants were engaged in the sale of a miscellaneous line of floor coverings all of which at the time of his return had been abandoned with a single exception. The single exception "Tumble-Twist" is being handled on an entirely different basis. Defendants became the exclusive sales agents throughout the United States for this particular product and were committed to an extensive financial outlay for a national advertising campaign. This necessarily required a readjustment of their sales organization in respect to both territory and rates of commission. Due to demand and shortages it became necessary to allot the merchandise among the various customers. Total sales in the territory formerly covered by plaintiff had multiplied by six. A salesman's job became one of maintaining good will in the trade rather than salesmanship. The territory of all other salesmen as well as rates of commission were reduced. Why not plaintiff? Plaintiff earned the last year of his previous employment $4922.83. Why should he now be entitled to a windfall of some $30,000 per year? Even in the absence of changed conditions the Act only requires that a returning soldier be restored to a "position of like seniority, status and pay," —not that he be placed on a pedestal, head and shoulders above his co-workers. This is bound to spell dissent and dissatisfaction in any organization to say nothing of its injustice to others.

Plaintiff was discharged from military service on December 17, 1945, and on December 18, 1945, demanded of defendant immediate restoration. The District Court found that defendants offered him restoration at $7500 per year which plaintiff refused, albeit the territory did not include all of the territory formerly covered by him. The District Court having heard the testimony of both plaintiff and defendants and observed their demeanor must have concluded that plaintiff was somewhat arbitrary and unreasonable in his demands. It is my considered judgment that the majority opinion produces an inequitable and unjust result and one not in the contemplation of Congress in the enactment of the Selective Service and Training Act of 1940.