J. Morton Rosenblum, of Manchester, N. H., for defendant Louis E. Segal.

Ernest R. D'Amours, of Manchester, N. H., for defendant Amoskeag Hamper Co.

### GALLANT v. SEGAL et al.

#### Civ. No. 594.

District Court, D. New Hampshire.

Oct. 1, 1947.

CONNOR, District Judge.

This action arises under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.Appendix, § 308, 50 U.S.C.A.Appendix, § 308, as extended by Service Extension Act of 1941, 50 U.S.C.Appendix, §§ 351–357, 50 U.S.C.A.Appendix, §§ 351–357.

In 1939 the Amoskeag Hamper Company was formed, the promoter of which was the petitioner. He induced the defendant Segal to join with him and one Miller in this enterprise, Segal furnishing substantially all of the funds in subscribing to nineteen shares of the twenty-five shares of the capital stock. Under the arrangement of the promotion and formation of the company, the petitioner was named salesmanager, his duties in the main consisting of the supervision of sales and the hiring and direction of salesmen. He was elected president of the corporation, with Segal treasurer and Miller clerk. The corporation operated on a small scale, at no time employing more than fifteen persons in the manufacture of wicker hampers. The three incorporators and sole stockholders were to receive six

per cent on their investment, and the profits of the business were to be equally divided. In addition thereto, the petitioner, in his capacity as salesmanager, was to receive two per cent of the sales. The venture proved unsuccessful during the period the petitioner was associated with it, and a substantial deficit occurred, claimed by the defendant Segal to be due to the unsound business practices of the petitioner. The petitioner severed his connection with the company upon entering the armed services in 1942, and shortly thereafter brought suit against the corporation for a claimed breach of agreement, which suit was settled with Segal providing the funds therefor. In June, 1944, the defendant having acquired all of the stock, including that of the petitioner, caused the corporation to be dissolved by a decree of the Superior Court of New Hampshire, subject to certain provisos not here material, and thereafter operated the business as an individual. The petitioner alleges that upon his release from service he applied to Segal for reinstatement to his former position, but was refused on the ground that the business did not then necessitate the services of a salesmanager. Shortly thereafter, on January 3, 1946, Segal disposed of the business to third parties. Although the corporation is named as a party in the petition filed June 28, 1946, it appears that service was not made upon it, and accordingly is not before the Court in this proceeding. Therefore, the only question to be considered is, to what benefits, if any, the petitioner is entitled under the Act as against Segal. It is the petitioner's contention that he should have been restored to the position he held at the time of his entry into the service and that Segal's refusal being unlawful, he must respond in damages. The defendant denies that he was under any obligation to reemploy the petitioner, and assigns various grounds in support of his position.

Without deciding the other issues raised by the pleadings, disposition of this petition may be made by determining whether the defendant's circumstances had so changed as to make it impossible or unreasonable to reinstate the petitioner. The essential facts bearing upon this issue are not in serious dispute, and thereupon is presented the question whether the petitioner's case is within the statute.

■■ The evidence plainly compels the conclusion that there had been a change of circumstances in the conduct of the business between the time of the plaintiff's induction and his discharge from the service. In the interim no one was employed in substitution, and, so far as it appears, there was no need for such. The entire output was absorbed by one customer, in fact difficulty was experienced in meeting even this commitment because of the unavailability of materials and supplies. To reengage the petitioner to promote or solicit sales in the face of these limitations would be an absurdity. Nor does it appear that within the employ of the defendant there was available to the petitioner any other position of like seniority, status, and pay. In the light of these circumstances, to require the defendant to reemploy him as salesmanager would mean simply creating a useless job. Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653. Such is not within the contemplation of the Act, for by its terms the employer is absolved from the duty of reinstatement whenever it sufficiently appears that to demand its observance would be unreasonable.

There are additional factors to be considered in passing upon the question of the reasonableness of the situation. Since the petitioner's induction there has been a change in the structure and ownership of the business. The defendant had acquired and operated it as an individual, and if financial loss resulted, it would have been personal and not corporate. During the petitioner's tenure, the corporation incurred substantial losses, which the defendant contends were due to the sales policy established by the petitioner. This, together with other incidents, doubtless accounts for the evident unfriendliness and lack of confidence on the part of the defendant. A harmonious and cooperative relationship could hardly be expected under such conditions, with consequent detriment to the business itself. McClayton v. W. B. Cassel Co., D.C., 66 F.Supp. 165. These circumstances lend further support to the view that the defendant was relieved under the

exemptive clause of the reemployment provisions of the Act.

It is my conclusion that the defendant's circumstances had so changed as to make it unreasonable to have required the reinstatement of the petitioner to his former position. Accordingly the petition must be dismissed, and an order will be so entered.