### LOEB v. KIVO et al.
### Civ. No. 35–455.

District Court, S. D. New York.

Dec. 19, 1947.

Judgment Affirmed Aug. 4, 1948.

Feingold & Falussy, of New York City (Alfred Feingold and Aloysius C. Falussy, both of New York City, of counsel), for plaintiff.

Scribner & Miller, of New York City (Herbert Plaut, of New York City, of counsel), for defendants.

CLANCY, District Judge.

1. The plaintiff, in 1939, entered into the employ of John Kivo, Inc., a New York corporation apparently owned and admittedly controlled, operated and managed by John Kivo, one of the defendants. He continued in such employ under annual contracts until his entry into the Army on November 9, 1942. His 1942 contract, like the others required payment of commissions on orders obtained by him actually delivered and commissions were paid him through December, 1942 on merchandise delivered to the end of the year 1942. There were also paid him monthly payments of $25 for a period of twenty months on account of the services he had rendered in sampling certain of his customers who became buyers later as a result of his sampling efforts.

2. Plaintiff was discharged from the Army on December 11, 1945 and the following day attended at the office of the defendants. The defendants constitute a partnership which took over and continued the business of John Kivo, Inc. and the defendant Kivo is the same person who controlled the corporation of John Kivo, Inc. hereinbefore referred to. The plaintiff, on December 12, 1945, asserted his right to a job as salesman with the defendant partnership on the same terms of ten percent commission under which he was employed when he entered the Army and at that time no objection was asserted by Kivo on the ground that the partnership was a different business, not liable under the Act of September, 1940, 50 U.S.C.A.Appendix, § 301 et seq., enacted for the protection of veterans in their employment.

3. In December, 1945, business conditions were such that all orders could not be filled by defendant due to a shortage in materials and in labor. The volume of merchandise manufactured and sold by the defendants exceeded in dollar value the business done by John Kivo, Inc. in 1942. Many orders were filled although cancellation of others was required by conditions. Sales were effected in the defendants' office in most cases instead of in the office of the prospective purchasers. Nevertheless solicitation of orders was a feature of defendants' business and while pressing solicitation for continuous business outside of the office was unnecessary because of the volume of business offered the defendants, the negotiations of sales was done by Kivo and Meyer, a salesman, in much the same manner as it had been done in 1942 excepting only that the defendants' office was the scene of the selling in most cases instead of the offices or factories of prospective purchasers.

4. In 1945 the sales were effected by Kivo and one Meyer who had been employed before and during 1942 and throughout the war by John Kivo, Inc. and the defendants. In 1942 Meyer, like the plaintiff, worked on a commission. The plaintiff was ingenious enough to see a possible extension of the business of John Kivo, Inc. among the manufacturers of millinery and had specialized in that line although his sales were not exclusively to milliners. Some of these millinery manufacturers had been purchasers from John Kivo, Inc. before plaintiff's attachment to that firm.

Meyer devoted his efforts to the maintenance of the trade of John Kivo, Inc. with the manufacturers of bridal equipment which appears to have been at the time the mainstay of John Kivo, Inc. The sales effected by the plaintiff grew with his efforts and in 1942 when plaintiff left for the Army constituted a considerable portion of the business of John Kivo, Inc. It appears that it had been the usual practice for both the officers of the corporation and its salesmen to do much of the work of packing and shipping. The salesmen were interested in this process since their commissions depended upon delivery and this practice continued through the war years.

5. During the year 1943, because Meyer and Kivo both served all customers including the firms that had been the customers of plaintiff and also because war conditions made the outside solicitation of orders unnecessary, Kivo fixed Meyer's recompense at four percent of the gross business done by Kivo instead of the ten percent he had been paid on orders obtained by him and delivered. At all times Meyer was the salesman and the management of the office was done by John Kivo although some of the business details may have been attended to by Meyer during Kivo's absence from the office entailed by his excursions to purchase material for the business and by sickness at his home. On or about September 28, 1944 the business of John Kivo was transferred to the defendant partnership with its assets and good will, subject to the claims and liabilities outstanding against the corporation John Kivo, Inc. and Meyer's employment continued on the same terms thereafter with the partnership.

6. Upon the plaintiff's return to the defendants' office on December 12, 1945, the individual defendant, John Kivo, advised him that salesmen were unnecessary, that orders could not be filled because of material and labor shortages, that such was the condition of the business that a ten percent commission agreement like that which he had enjoyed when he entered the Army would not produce more than $2,000 or $3,000 a year. Instead he was offered a contract to continue his old work as a salesman but fixing his recompense at two percent of the gross business done by the defendants. Plaintiff relied on the statement of the defendant, John Kivo, and accepted this agreement and the defendant, John Kivo, and plaintiff shook hands to manifest their mutual understanding and agreement. It was required at that time that salesman, Meyer, who had been during 1945 and was then being paid four percent of the gross business for his efforts for the defendant concern, would relinquish one percent and accept three percent of the gross business as his earnings, in consideration of the reemployment of plaintiff and this agreement with Meyer was reduced to writing. Coupled with it there was an oral agreement whereby Kivo, on behalf of the partnership promised Meyer that his earnings under the three percent agreement in 1946 would be not less than his earnings under the four percent agreement which obtained in 1945 and that the defendants would make up any difference.

7. On December 13, 1945, after plaintiff and the defendant, John Kivo, had agreed on plaintiff's reemployment at the rate of two percent of the gross earnings of the defendant firm, the defendant Kivo sought an interview with the plaintiff and before that interview transpired prepared in writing an agreement to employ the plaintiff for the year 1946 at the rate of $100 weekly. The contract also required the plaintiff's rendition of services involved in the routine work of the defendants, this being a reference both in their oral agreement and in the minds of both contracting parties to the work ordinarily done in 1942 and in 1945 in the shipping room by both salesmen and their employers. The reason given for the changed terms by Kivo to the plaintiff was the smaller earnings of the plaintiff in 1942 and the growth of the defendant's business during the war years. Plaintiff executed this agreement and entered on his duties in January, 1946. He was confined by the orders of Kivo to the stockroom, given no opportunity to meet any customers including those who were his customers in 1942, no time outside the defendants' offices to solicit business or to seek familiarity with his old customers, and denied all opportunity of any kind to act as a sales-

man. At the end of three weeks and towards the end of January, 1946, the plaintiff protested that the new conditions under which he was required to work constituted a change of his employment which he refused to accept and when the defendants offered no modification of employment terms except freedom to go out on one afternoon each week to interview customers —a wholly unfeasable condition—he quit the defendants' employment.

8. Thereafter he was employed by Smario Flower Co. as a commission salesman for three months during which he earned $1,783.87. In April he entered into a partnership agreement with others and on June 1, 1946 entered into business on his own account as a partner in that business. His share of the earnings of this partnership up to the end of the year 1946 amounted to $3,725.31 so that all his earnings for the year 1946 total the sum of $5,509.18.

9. The defendants at all times knew their liability to reemploy the plaintiff on at least the same terms as those that prevailed when he entered the Army. The representations made by John Kivo on his own behalf and on behalf of the other defendants that salesmen did not operate and that the plaintiff could not earn a living by employment at a ten percent commission on which he worked before entering the Army, were false and known to be false by Kivo when made and were relied upon by the plaintiff. There was as much opportunity for the plaintiff to operate as a commission salesman in the defendants' business in 1945 and 1946 as there had been in 1942. Salesmen's orders were filled including the orders of those firms that were the plaintiff's customers when he entered the Army. There may have been some cancellations and maybe reductions in the size of individual orders—no specific cancellations were proved—but nevertheless defendant, Kivo's representations to the plaintiff of the conditions of the market and of the volume of defendants' business were false in fact. The contract into which the plaintiff was induced to enter was part of a scheme concocted by the defendant, Kivo, to give token service to the Statute intended to protect veterans in their em-

ployment and at the same time to keep a good salesman away from his competitors, a consideration that he himself stated during his testimony. The contract was a fraud on the plaintiff who had every right to denounce and reject as he did when he discovered the truth after he started to work under it.

10. The least amount of earnings which the plaintiff lost by the defendant's failure to employ him as required by the Act would be the amount paid to Meyer for rendering the services which the plaintiff should have been permitted to render. The amount is three percent of the gross business for 1946 which would be $13,465.92.

Conclusions of Law.

1. The plaintiff was entitled to reemployment for a period of one year by the defendants at a rate not less than three percent of the gross when he returned from the Army.

2. Plaintiff is entitled to judgment for loss of earnings in the sum of $13,465.92, less the sum of $5,509.18 actually earned by him during 1946, leaving a balance of $7,956.74 with interest from January 1, 1947.

■■■ The plaintiff, Loeb, was employed by the defendant, John Kivo & Co., from 1939 to 1942 under annual contracts each good for a year. The defendants contend that since his last contract was for one year only, and that year expired December 31, 1942, that Loeb's position was temporary. A temporary position as contemplated by the Act means one which by its very nature is limited and temporary. A contract which limits the duration of employment is not conclusive evidence that the position is or is not temporary. Salzman v. London Coat of Boston, 1 Cir., 156 F.2d 538. "The important thing is the nature of the position rather than the terms of the contract." Trusteed Funds v. Dacey, 1 Cir., 160 F.2d 413, 418. In plaintiff's case his employment had run from 1939 to 1942 without interruption. The employment, subject to the satisfaction of both parties, was permanent and was so understood by them. Employment otherwise permanent in character con-

tinued under annual contracts is not the temporary employment excepted by the Act. Grone v. Congregation of Brothers of St. Xavier, D.C., 72 F.Supp. 544.

The defendants' business was changed during the years that Loeb was away. Its gross sales have greatly increased. Its salesmen no longer have difficulty in selling to their customers, the demand for defendants' product exceeds the supply. Nevertheless defendants still solicit business, even though in these days the seller's market has made it possible to conduct the greater part of the solicitation and selling in the defendants' office. For this task both Meyer and Kivo are presently being used. The defendants contend that because of the great prosperity which the firm enjoys, making it possible to sell a greater volume of merchandise than ever before, right from the firm's office, the circumstances of the business have changed so much that the rehiring of plaintiff at his old job would be unreasonable.

It is impossible or unreasonable in the meaning of the Act, to rehire a veteran when there no longer exists any position to which he can be hired; when due to the discontinuance of a business or that part of a business in which the veteran had been employed there is no longer such job open, or any other job of similar seniority status and pay, Lord Mfg. Co. v. Nemenz, D.C., 65 F.Supp. 711, or when due to the slowing of production the employer is compelled to lay off certain employees of lower seniority, of which the veteran happens to be one. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. But the mere abolishing of a single department is not an excuse by the employer to fail to rehire the veteran. If the employer is in business, and if he employs approximately the same number of people the employer is bound to restore the employee to a position of like status and pay if there is such within the company's organization, Sullivan v. West Co., D.C., 67 F.Supp. 177, even though so restoring might result in loss of efficiency or economy of operation. Van Doren v. Van Doren Laundry Service, D. C., 68 F.Supp. 938.

Defendants contend that since the largest amount plaintiff made before the war was for the ten months of 1942 when he earned $3,699, that the return of plaintiff in defendants' employ at a salary of $5,200 satisfied the statute. But the Act was intended to maintain the veteran equal in all respects to those who stayed behind. Upon his return he became entitled to all increases, emoluments and benefits accruing or accrued naturally or in course to his position. The earnings of the other salesman grew because of market conditions. The plaintiff was entitled to share in the fruit of such favorable conditions. Plaintiff has an accurate measure of his damages in the other salesman who seems just the theoretical person whose position the Act gives to plaintiff. He received three percent of the gross business during the year of 1946 or $13,465.92 and this is the amount plaintiff would have earned had the defendants complied with the Act.

Defendants claim that by accepting a position with Kivo at a salary of $5,200 plaintiff waived his right to reemployment under the Act. It must be convincingly shown that the words or conduct relied upon evince a clear and unmistaken intent to waive the benefits of the Act. Niemiec v. Seattle Rainier Baseball Club, D.C., 67 F. Supp. 705.

Defendants also seek to use the fact that plaintiff made a demand for a lump sum of $3,000 shortly after returning to work as an excuse to avoid liability. This is a justifiable demand upon an employer who had failed to grant him his rightful position. In any event a veteran does not lose his rights under the Act "merely because in applying for reemployment he couples such application with a demand for something he erroneously believes to be his due." Trusteed Funds v. Dacey, supra.

The objection made that plaintiff disqualified himself for the relief he asks because he sought other means of subsistence requiring him to devote all his time to this other business, deserves no answer. It was his duty to seek to mitigate damages. Dodds v. Williams, D.C., 68 F.

Supp. 995. Plaintiff may sue for wages due him under the Act, § 8 (e) and need not sue to be restored to his former position. An employee may sue for loss of wages or re-employment or both. Kent v. Todd Houston Shipbuilding Corp., D.C., 72 F.Supp. 506.