**LOEB v. KIVO et al.**

No. 249, Docket No. 20959.

Circuit Court of Appeals
Second Circuit.
Aug. 4, 1948.

SWAN, Circuit Judge, dissenting.

Allan R. Campbell, of Bronxville, N.Y. (Scribner & Miller and Herbert Plaut, all of New York City, on the brief), for appellants.

Alfred Feingold, of New York City (Feingold & Falussy and Aloysius C. Falussy, all of New York City, on the brief), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action brought under § 8(e) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308(e), to compel compliance by the employer with its provisions and, "as an incident thereto," to compensate him for any loss of wages or benefits suffered by reason of the employer's failure to reinstate him to his former position or to a position of like "seniority, status, and pay," as required by subds. (b) (B) and (C) of said § 8. The appellants advance three grounds for reversal: (1) that plaintiff waived his statutory right by accepting a contract of employment for a substituted position which he voluntarily abandoned; (2) that the employer's circumstances had so changed as to make it impossible or unreasonable to reinstate plaintiff in his former position; and (3) that plaintiff disabled himself to accept reinstatement by forming a partnership to conduct a business in competition with the defendants and therefore can recover no incidental damages.

John Kivo, Inc., a New York corporation, which was plaintiff's employer at the time of his induction into military service in November, 1942, was engaged in the manufacture and sale of artificial flowers for the bridal and millinery trade. Plaintiff was engaged as a salesman, receiving 10% commission on orders he obtained that the company filled. He was first employed in the summer of 1939, and his employment was renewed under yearly contracts ending December 31. During seven months of 1939 his commissions were $308; in 1940 they were $806.15; in 1941, $1,210.60; in 1942, $3,699.38, commissions being paid him through December, 1942, on merchandise delivered during that year. He spent 90 per cent of his working time soliciting orders outside the company's plant, and about 10 per cent inside helping in the packing and shipping department. The plaintiff was ingenious enough to see a possible extension of the business among the manufacturers of millinery and had specialized in that line, so that when he left for the Army it constituted a considerable portion of the business of John Kivo, Inc. After his induction the company paid him $25 a month for twenty months for services rendered in sampling certain customers who became buyers later as a result of his sampling efforts.

During 1940 or 1941, the corporation took on another outside salesman, a younger man, Herbert Meyer, at the same commission. His contracts were chiefly with the bridal trade, while he also did some inside work in the packing and shipping department. He, however, did not go into service; and it was his situation, including the great increase in remuneration which he received coincidentally with the sharp increase in prosperity of the business, which the court below, against defendants' vigorous objections, used as a yardstick in determining plaintiff's rights on his return from service. Meanwhile in September, 1944, the corporation of John Kivo, Inc., was succeeded by a partnership consisting of John Kivo, his wife, and his son-in-law, the defendants in the suit at bar. This change of ownership of the business is not relevant, however, to any of the issues on this appeal, as no contention is made that the partnership stands any differently from

the corporation with respect to the statutory duty to re-employ plaintiff on his discharge from military service.

Commencing in 1943 and continuing through 1946 there was an important change in conditions affecting the artificial flower business. The buyers' market which had existed during the years of the plaintiff's employment by John Kivo, Inc., and required active solicitation to obtain customers' orders, had been converted into a strong sellers' market. The outside solicitation of orders was no longer necessary; customers came to the firm's office to look at samples and to place orders; and the customers were mostly jobbers, instead of hat manufacturers. The demand for flowers exceeded the supply, necessitating the cancellation and cutting down of orders. No longer was any outside salesman employed. Meyer spent all of his time at the plant, taking orders by telephone or by personal interview with customers who came to the office and attending to various business details when Kivo was absent by reason of excursions to purchase materials or because of his wife's illness. The court found, however, that nevertheless solicitation of orders was still a feature of defendants' business and that negotations of sales were done by Kivo and Meyer in much the same manner as they had been done in 1942 except that they occurred in defendants' offices, rather than in the places of business of the prospective buyers. During 1943 Meyer's compensation was changed from a 10% commission on the orders he obtained to a percentage on gross sales. In 1946 he earned $13,465.92, being 3% of gross sales.

Immediately after plaintiff's discharge from the Army on December 11, 1945, he called on Kivo and asked to be restored to his former employment. Kivo informed him that the changed conditions had made salesmen unnecessary, that orders could not be filled because of material and labor shortages, and that at his old commission of 10% on his own sales he could not make more than $2,000 to $3,000. So Kivo first made a contract with plaintiff for the latter's continuance as salesman at, however, 2% of defendants' gross sales; it appeared that Meyer, who in 1945 was receiving 4% of such sales, was to agree to reduce his recompense to 3%, though Kivo orally promised to make up to him any earnings less than his 1945 receipts. The next day, however, Kivo withdrew from this contract and instead offered plaintiff a contract for the year 1946 at $100 a week to do "selling and all duties that the firm requires in relation to the daily routine." Relying on Kivo's representations (which the district court has found to be false and made with intent to mislead) plaintiff signed the contract and began work on January 2, 1946. By orders of Kivo, as the court found, plaintiff was kept at work in the stockroom, was given "no opportunity to meet any customers including those who were his customers in 1942, no time outside the defendants' offices to solicit business or to seek familiarity with his old customers, and denied all opportunity of any kind to act as a salesman." D.C., 77 F.Supp. 523, 526. At the end of three weeks plaintiff abandoned his job, claiming it was a change from his pre-war employment. He immediately went to work as a salesman for a competitor of the defendants on the basis of a 20% commission, and in this employment he earned $1,783.87. On April 8, 1946, he entered into a partnership agreement with two others to manufacture artificial flowers. The partnership was to continue three years and plaintiff agreed to devote all his time to the partnership business. His share of partnership profits for 1946 amounted to $3,725.31. Two days after executing the partnership agreement plaintiff brought the present suit.

The district court held that there was no such change of circumstances as to make reinstatement of plaintiff impossible or unreasonable within the meaning of the Act; that acceptance of a position with the defendant firm at $5,200 for the year was not a waiver of his statutory right; that his partnership agreement was no bar to recovery of damages; and that he was entitled to an award for loss of compensation to be measured by the amount paid to Meyer in 1946 for rendering the services which plaintiff should have been permitted to render. From $13,465.92, the amount

earned by Meyer in 1946, were deducted plaintiff's earnings as an employee, plus his share of partnership profits, making a total of $5,509.18. This left a balance of $7,956.-74, which was awarded to plaintiff as damages, plus interest thereon from January 1, 1947, and costs. D.C., 77 F.Supp. 523, 527. The total judgment from which this appeal is taken was therefore $8,483.07.

Defendants first argue that whatever their obligation to plaintiff under the Act, he has waived his rights and is not entitled to reimbursement. They refer to his acceptance of the contract of January 1, 1946, in which he agreed with defendants to work for them at $100 a week to do selling and the other duties required by the firm. A waiver by a veteran of his statutory rights must, however, be clearly and unequivocally indicated. Niemiec v. Seattle Rainier Baseball Club, D.C.W.D.Wash., 67 F.Supp. 705, 709. It must be shown that he was aware of the rights he gives up and that he fully intended to abandon them. When plaintiff sought reinstatement to his pre-war job, Kivo represented that the defendants had no obligation to rehire him in view of the changed circumstances of the business, and that no salesmen were operating or needed. On this basis plaintiff was induced to sign the contract. In view of these circumstances it cannot be said that when he signed he was aware of the rights which were due him and fully intended to surrender them. On the contrary, he was led to believe that defendants had no obligation to him at all. Whether fraudulently (as the court found) or mistakenly misled, plaintiff is not barred from relief under the Act by his acceptance of the contract under such conditions.

Defendants' main justification of their refusal to reinstate plaintiff is their contention that his pre-war position of salesman no longer exists and that there is no position of like status, seniority, or pay. They point to the changed circumstances of their trade wherein sales work has been reduced to mere order taking, with more orders than the firm can handle. They point out, too, that it was no longer necessary to have salesmen visit customers at their places of business or drum up trade on the outside; customers came to the plant itself to place their orders. But we do not believe this constitutes such a change in circumstances as to make it unreasonable or impossible to restore plaintiff to his old position. It is true selling had become less difficult, but this alone would not excuse compliance with the statute. Levine v. Berman, 7 Cir., 161 F.2d 386, certiorari denied 332 U.S. 792, 68 S.Ct. 102; Allyn v. Abad, 3 Cir., 167 F.2d 901. As the evidence indicated, there was still sales work to be done Samples had to be made up and displayed, customers to be dealt with, and orders to be taken. Indeed, orders were taken and deliveries were made to plaintiff's former accounts in the millinery trade. Such a case must be distinguished from those where there was an abandonment of sales by representatives and a return to a mail order business, Frank v. Tru-Vue, Inc., D.C.N.D.Ill., 65 F.Supp. 220; or where the entire output of the employer is sold exclusively to one buyer, Gallant v. Segal, D.C.N.H., 74 F.Supp. 78, making a salesman totally unnecessary. But an increase in business with the resultant change in the method of sales as here took place offers no justification, we believe, for defendants' action.

In reaching its conclusion, the district court not only found the intent on the part of Kivo to mislead plaintiff by false representations, to which reference has already been made, but also refused credence to the extreme statements by Kivo and Meyer as to the change in the character of the business. Being certainly not clearly erroneous, we accept these findings; they make yet the clearer the picture which emerges of one employee going to war for three years and returning to find that an associate has reaped the reward in money and position by being able to stay with the job. To an outsider the conditions of the business would appear the same except for the obvious advantages resulting from wartime prosperity and the universal experience of the need to turn away, rather than to solicit, business during this period. This situation would seem peculiarly the case for the application of the remedial functions of the

350

Act. The findings show that this is not the case of requiring the creation of a useless position for the veteran, cf. Kay v. General Cable Corporation, 3 Cir., 144 F. 2d 653, 655, but the granting of some equality of treatment with the stay-at-home employee who had originally been his junior. The similar cases of Levine v. Berman and Allyn v. Abad, both supra, are persuasive. The "escalator" referred to in Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 284, 285, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, should not pass him by entirely; he should find himself upon it at some point near that of his associate upon whom fortune has smiled so benignly.

 Next defendants urge that by contracting with his new partners to devote his entire time to the partnership business plaintiff has disabled himself to accept reinstatement and therefore has no standing to sue under the Act.[1] But we cannot say, merely because of this provision in the contract, that plaintiff has so disqualified himself. There was never an offer of reinstatement made or refused. The complaint filed two days after the signing of the partnership contract states that "plaintiff was and still is qualified to perform the duties of the position which he formerly held" and demands judgment requiring the employer to comply with the provisions of the Act, with compensation as an incident thereto. Though the trial court did not order reinstatement, it made no finding that plaintiff was ineligible for re-employment by defendants.

 But even if the partnership contract be construed as disabling plaintiff from working for defendants, we do not believe it is a bar to this action if the defendants' failure to reinstate him in the first instance was unlawful. When plaintiff made his initial demand for reinstatement following his release from the Army he was able, willing, and qualified to resume his previous duties. It was only after defendants' refusal to restore him to his former position that plaintiff sought other employment resulting in the partnership contract. It has been held that, on refusal of an employer to reinstate, it is the duty of the veteran to seek other employment in an effort to mitigate damages. Dodds v. Williams, D.C.Ariz., 68 F.Supp. 995, affirmed 9 Cir., 163 F.2d 724; Houghton v. Texas State Life Ins. Co., D.C.N.D. Tex., 68 F.Supp. 21, 23; John S. Doane Co. v. Martin, 1 Cir., 164 F.2d 537, 541. If on the one hand a veteran is required to mitigate damages and then on the other he loses his rights under the statute because of compliance with this duty, the benefits of the statute became merely illusory. So to make a distinction in mitigating unemployment between cases where the veteran contracts for his exclusive services and those where he takes only a temporary job with freedom to accept re-employment may discourage the veteran from making the best arrangements possible for himself after his previous employer has refused reinstatement in violation of the statute. We do not believe this result was intended by Congress. The contrary construction of the Act does not convert it into a penal statute. The employer's obligation remains merely to make the veteran whole and he gains to the extent of the veteran's earnings which go to reduce the award of damages.

 There remains the question as to the proper measure of damages. In 1942,

---

[1] The contention that the court has no power to award damages except as an incident to an order for re-employment must be rejected. True, cases like Feore v. North Shore Bus Co., 2 Cir., 161 F.2d 552, 553, and Hall v. Union Light, Heat & Power Co., D.C.E.D.Ky., 53 F.Supp. 817, 818, in which independent suits for damage were allowed, are not wholly conclusive, since there the veteran had been reinstated, though tardily, before the action. But to permit the employer to defeat an action for damages incidental to his earlier refusal to rehire by subsequent reinstatement would to a large extent nullify the benefits of the statute. Compare also cases such as Kent v. Todd Houston Shipbuilding Corporation, D.C.S.D.Tex., 72 F.Supp. 506, 509, where the position to which the veteran sought reinstatement had been abolished for good cause by the time of the commencement of his suit. See also Bochterle v. Albert Robbins, Inc., 3 Cir., 165 F.2d 942.

the year preceding his induction, plaintiff earned $3,699.38. In the light of this defendants contend that the contract for $100 a week offered by them to plaintiff, accepted and later broken by him, was adequate compensation and serves to discharge their duty under the statute. The district court rejected this contention and took as the measure of what plaintiff would have earned in 1946 if properly reinstated the 1946 salary of Meyer, who, as the court found, "seems just the theoretical person whose position the Act gives to plaintiff." D.C., 77 F.Supp. 523, 528. Meyer earned $13,465.92 in 1946. This accords with the purpose of the Act to save for the veteran the benefits which accrued to his pre-war job during the period of his service if Meyer may properly be considered to occupy a position comparable to the one to which plaintiff was entitled. Fishgold v. Sullivan Drydock & Repair Corporation, supra; Levine v. Berman, supra; Trusteed Funds v. Dacey, 1 Cir., 160 F.2d 413, 419, 420, and see the lower court opinion, Dacey v. Trust Funds, Inc., D.C.Mass., 66 F.Supp. 321, 323; also Martin v. John S. Doane Co., D.C.Mass., 68 F.Supp. 783, 784, judgment vacated on another ground in John S. Doane Co. v. Martin, supra.

Defendants challenge the court's finding on this point, alleging that Meyer was no longer a salesman, but had become the manager of the firm, and that his increase in pay was due to the increase in responsibility. But this view is foreclosed by the court's contrary findings, which have ample support in the evidence. By Kivo's own testimony Meyer handled whatever sales were made. He made up samples, displayed them, dealt with customers, and took orders. As we have pointed out, merely because all this was done on defendants' premises, instead of on the outside, does not change its basic character. Then, too, Meyer's contracts for 1944, 1945, and 1946 read that he was to do "selling, and all duties that the firm requires in relation to the daily routine"—the identical language of defendants' 1946 contract with plaintiff. Moreover, Meyer was not given the title of manager, nor was he allowed to sign checks for the firm. As Meyer himself agreed at trial, in 1946 he was a salesman with very little outside work to do and with the same related inside duties he had had in 1942. Plaintiff's damages therefore are properly determinable by reference to Meyer's earnings for the period in question, less whatever he earned on his own during that time. The fact that plaintiff's 1946 earnings thus become greatly increased over his 1942 earnings does not matter, since he was entitled to share in the war-fostered prosperity of the firm. Levine v. Berman, supra, 161 F.2d at page 388; Trusteed Funds v. Dacey, supra; Mihelich v. F. W. Woolworth Co., D.C.Idaho, 69 F.Supp. 497, 498.

Judgment affirmed.

SWAN, Circuit Judge (dissenting).

The statutory right of an honorably discharged veteran who applies for reemployment is to be restored to his former position or to one "of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." 50 U.S. C.A.Appendix, § 308(b) (B). Plaintiff's former position was that of an outside salesman who had to seek out customers at their places of business and overcome sales resistance in a highly competitive market; he testified that until he left in 1942 he had to work hard to get new accounts and to keep old accounts. His pay was 10% commission on orders he procured which the employer filled. When he returned in 1945 conditions had so changed that, as the court found, the outside solicitation of orders was unnecessary. No outside salesmen were employed, customers sought out the firm to place orders, and the shortage of labor and materials was such that $100,-000 of orders received in 1945 had to be cancelled.[1] In such circumstance to employ plaintiff as an outside salesman to solicit orders on a 10% commission would have created an unnecessary position and required the defendant firm to pay for services of no value to it. The statute does not require the employer to create a

---

[1] Exhibit 8 shows gross sales for 1945 of $369,555.51.

352

useless job in order to reemploy the returning veteran. See Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 655; Gallant v. Segal, D.C.N.H., 74 F.Supp. 78, 79; Frank v. Tru-Vue, Inc., D.C.S.D.Ill., 65 F.Supp. 220, 223. In my opinion changed conditions had done away with the position of outside salesman and plaintiff was not entitled to be "restored" to such position. And the district court, as I understand its opinion, did not hold the contrary.

The theory upon which judgment was awarded to the plaintiff appears to be that he was entitled to a position with the defendants similar to that held by Meyer during 1946. This is demonstrated by the way plaintiff's damages were measured, paragraph 10 of the opinion stating:

"10. The least amount of earnings which the plaintiff lost by the defendant's failure to employ him as required by the Act would be the amount paid to Meyer for rendering the services which the plaintiff should have been permitted to render. The amount is three per cent of the gross business for 1946 which would be $13,465.-92."

And again, in the "Conclusions of Law" the opinion says:

"Plaintiff has an accurate measure of his damages in the other salesman who seems just the theoretical person whose position the Act gives to plaintiff."

These statements I do not understand to mean that by reason of seniority plaintiff should have been employed in place of Meyer, for at the conclusion of the trial defendants' counsel, in arguing a motion to strike out all testimony relating to Meyer's 1946 earnings, asserted that there was no problem of seniority in the case, and the court said "I agree with you." Nor has the plaintiff contended, either at the trial or on appeal, that Meyer should have been discharged and plaintiff given his position because of seniority rights. The quoted statements mean only that Meyer's position in 1946 was "a position of like seniority, status and pay" to that of the plaintiff in 1942. With this conclusion I am unable to agree.

There being no claim of seniority rights, the question is whether Meyer's position was one of like "status and pay." Obviously the basis of pay was different, being based on a percentage of gross sales instead of a commission on orders obtained by the employee's own efforts. However, this difference is not necessarily fatal to his claim, since a returning veteran is entitled to share in the benefit of increased emoluments paid to employees whose work is of the same character as he formerly performed. But the character of Meyer's work in 1946 seems to me essentially different from plaintiff's duties in 1942. First, the place of work was different; it was all within the plant, while 90% of plaintiff's activities had been outside among prospective customers. Second, Meyer's inside work differed in several respects from any inside work in the shipping department which plaintiff had performed in 1942. As plaintiff himself testified from observation during his three weeks of employment in January 1946, Meyer not only made sales to customers in the office, but answered telephone inquiries as to "how far their orders are being filled and when they would be shipped," and "helped making out work slips and trying to help out manage the factory" (fols. 106, 107). Meyer and Kivo testified that Meyer was in charge as manager during Kivo's absence. The district judge apparently discredited their testimony as to this, as the opinion states in paragraph 5 that "At all times Meyer was the salesman and the management of the office was done by John Kivo although some of the business details may have been attended to by Meyer during Kivo's absence from the office." However, I see nothing in this finding to contradict the above-quoted testimony of plaintiff. In reality the decision holds that although changed conditions of business made it possible for one inside salesman to handle all customers' orders, and to attend to various "business details" in Kivo's absence, such as making out work slips and helping to manage the factory, the defendants were bound to employ an additional and unnecessary inside salesman in order to give plaintiff a job, and to pay the plaintiff for performing an unnecessary sales function the same compensation as the man who was alone able to handle all the neces-

sary inside work, which was more than three times plaintiff's highest earnings before induction. Such a conclusion seems to me "unreasonable" and beyond what section 8(b) (B) requires. No authority has been cited which goes so far. Levine v. Berman, 7 Cir., 116 F.2d 386 is distinguishable, for there the employer was still sending salesmen into the district which had been the plaintiff's exclusive territory before he went into military service. Allyn v. Abad, 3 Cir., 167 F.2d 901 is also distinguishable. There the veteran was restored to a position carrying a fixed salary of $45 per week; he was not, as in the case at bar, awarded a greatly increased compensation measured by that of an employee who had been selected to perform new duties in addition to the sales function.

For the above reasons I think judgment should go for the appellants, regardless of the other points argued by them, although I am in disagreement with my brothers on those points also.